Newell **SYKES**

v.

Frank A. **MATTER, et al.**

No. 3:02–0979.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 8, 2004.

III, Patten and Patten, Inc., Mat–Co Business Forms Incorporated, defendants.

## MEMORANDUM AND ORDER

BROWN, United States Magistrate Judge.

Currently pending in this civil action are plaintiff's motion to disqualify defendants' expert witness, Mr. John Kopra (Docket Entry No. 33), and defendants' motion to disqualify plaintiff's counsel (Docket Entry No. 49). These disqualification motions have been fully briefed, see Docket Entry Nos. 39, 49, 50, 52, 53, and 56, and for the reasons that follow, plaintiff's motion is DENIED and defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Counsel of record for plaintiff in this case are members of the law firm Boult, Cummings, Conners & Berry, PLC (hereinafter, "Boult Cummings"), who initiated this lawsuit on plaintiff's behalf on October 15, 2002 (Docket Entry No. 1). On February 20, 2004, plaintiff's counsel received an expert disclosure statement from the defense, identifying Mr. John Kopra of the LBMC Retirement Plan Company, LLC (hereinafter, "LBMC") as an expert witness in this action on issues related to damages. Plaintiff's counsel recently learned that other lawyers at Boult Cummings have previously represented LBMC and certain of its affiliates, including the affiliate where Mr. Kopra is employed. This representation spanned a period of fifteen years, though LBMC has not engaged Boult Cummings in any such representation for roughly the past three years. During the course of the firm's representation of LBMC, certain firm members (not including counsel of record here) have received or learned confidential information pertaining to both the company and the individual, Mr. Kopra.

John M. Scannapieco, Kathryn S. Caudle, Boult, Cummings, Conners & Berry, Nashville, TN, for Newell Sykes, plaintiff.

William Bryan Jakes, III, Howell & Fisher, Keith D. Frazier, Ogletree, Deakins, Nash, Smoak & Stewart, L.L.P., Nashville, TN, Howard Shapiro, Charles F. Seemann, III, Shook, Hardy & Bacon, LLP, New Orleans, LA, for Frank A. Matter, George D. Coon, Jr., Z. Carter Patten,

By letter dated March 1, 2004 (Docket Entry No. 49, Exh. 1), plaintiff's counsel informed LBMC of what it perceived to be a potential ethical issue in its cross-examination of Mr. Kopra during deposition and at trial, given the knowledge of certain firm members of confidential matters pertaining to Mr. Kopra's "professional competence." Counsel advised in the letter that they had unilaterally concluded that Mr. Kopra's agreement to serve as an expert witness in this matter constituted his consent, on behalf of LBMC, to Boult Cummings' use of any confidential information its members may possess in connection with any cross-examination of him at deposition or trial. Counsel further advised that a consent form enclosed with the letter should be signed in order to avoid any misunderstanding about the matter, and that if such express consent were not given by the close of business on March 3rd, "we will initiate the necessary action to have this matter resolved by the appropriate tribunal in order to carry out our obligations to our clients in the *Sykes* lawsuit." [1] By return letter dated March 3, 2004 (Docket Entry No. 38, Exh. A), LBMC declined to consent to the disclosure or use of confidential or privileged information.

After full disclosure of the potential conflict, plaintiff Sykes has consented to the continued representation of his interests by Boult Cummings. Plaintiff filed the instant motion for disqualification of Mr. Kopra on March 9, 2004. Included in the opposition to that motion by defendants Matco Business Forms, Inc., Frank A. Matter, and George D. Coon, Jr., is the instant motion for disqualification of plaintiff's counsel.

## II. DISCUSSION

### *Plaintiff's Motion to Disqualify Mr. Kopra*

■ This motion to disqualify must be denied. Boult Cummings is the conflicted party here, and the one to which the ethical rules [2] cited in the motion apply. If anyone is to be disqualified because of an ethical dilemma, it would seem only logical that it should be those members of the profession whose rules present the dilemma. Moreover, the alternative argument that Mr. Kopra's voluntary appearance in this action impliedly waives any privilege held by LBMC is without merit, inasmuch as the rule relating to such use of information obtained during representation of a former client, Rule 1.9 of the Tennessee Rules of Professional Conduct, clearly requires that such consent be given *after consultation.* In other words, such consent must be informed, and therefore can-

1. The undersigned has previously expressed his displeasure with the tone and aim of this letter, and now renews his objection. Despite counsel's assertion that "a fair reading of the letter" does not support its construction as a notice of intent to reveal confidences (Docket Entry No. 50, p. 2), the undersigned does not see how the letter can be construed as anything other than an attempt to strong-arm the client into consenting to the use of such confidential and/or privileged information (or persuading its employee Mr. Kopra to cut ties with defendant). Whether or not counsel intended to convey the threat of unconsented disclosure with this letter, the confidential

nature of the attorney-client relationship is and ought to be held sacrosanct, and the letter as worded does not comport with this ethical obligation.

2. The Local Rules of this Court provide that the standard of professional conduct of the members of the bar of this Court shall include the current rules endorsed by the Tennessee Supreme Court, at Tenn. Sup.Ct. R. 8. *See* Local Rule 1(e)(4). Accordingly, the Tennessee Rules of Professional Conduct, installed on March 1, 2003, govern the ethical issues raised here.

not be implied. *Selby v. Revlon Consumer Products Corp.*, 6 F.Supp.2d 577, 581–82 (N.D.Tex.1997).[3]

Lacking consent to reveal client confidences, counsel states that the continued participation of Mr. Kopra in this lawsuit leaves them with a Hobson's choice, between utilizing confidential information during cross-examination in violation of ethical duties on the one hand, and failing to zealously represent Mr. Sykes on the other hand, in violation of ethical duties, if potentially damaging confidential information is not so utilized. However, this argument ignores the third alternative that is always available to counsel laboring under, as the motion papers put it, "an irreconcilable difficulty under the Rules of Professional Conduct": withdrawal from representation. While counsel argues that "[i]t is basically unfair to require Mr. Sykes or his counsel" to make this choice, inasmuch as this conflict was not of their making, such is the sometimes unfortunate reality of proper practice within the legal profession. However, giving due consideration to Mr. Sykes' substantial interest in retaining and proceeding with counsel of his choice, the undersigned concludes that withdrawal is not required here, inasmuch as the potential for conflict can be removed by allowing plaintiff to retain other counsel for purposes of cross-examining Mr. Kopra at his deposition and at trial.[4]

*Defendants' Motion to Disqualify Plaintiff's Counsel*

Defendants Matco Business Forms, Inc., Frank A. Matter, and George D. Coon, Jr., argue that the ethical issues brought to the fore by plaintiff's counsel, instead of requiring the disqualification of Mr. Kopra, in fact require counsel's disqualification, and they have so moved. Defendants first cite Rule 1.7 of the Tennessee Rules of Professional Conduct, which provides as follows:

**Rule 1.7. Conflict of Interest: General Rule**

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents in writing after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

---

**3.** It should also be noted that allowing the use of the information that Boult Cummings may have about Mr. Kopra would give the plaintiff a windfall. If Mr. Kopra's firm had been represented by an unrelated law firm, there would be no doubt that any information about him would have remained confidential. In the opinion of the undersigned, plaintiff's counsel would have been better served to have secured the services of outside counsel on their own, instead of attempting to gain their own windfall by seeking to actually use

the confidential information against the expert.

**4.** Counsel also argued that requiring them to withdraw or disqualifying them would declare an "open season" on lawyers who could be conflicted out by the deliberate selection of an expert they had represented in the past. This concern is a bit overstated. The circumstance in which counsel would have knowledge of an adversary's prior representation of an expert or his/her firm would seem to be rare.

(2) The client consents in writing after consultation.

■ Despite defendants' citation of subsection (a) of this rule, they do not argue that Boult Cummings' representation of plaintiff is *directly* adverse to LBMC, nor can the undersigned so conclude. Rather, pursuant to subsection (b) of Rule 1.7, defendants cite counsel's virtual admission in their letter to LBMC that the current representation would be materially limited by their responsibility of keeping client confidences. There is no question that Mr. Sykes has consented, in writing and after consultation, to his continued representation by Boult Cummings (Docket Entry No. 37, Exh. A). While plaintiff's memorandum states that, "[i]n light of the fact that *trial counsel* have never represented LBMC or Mr. Kopra and the screening that has been employed, they do not believe their continued representation of Mr. Sykes will be adversely affected", this argument ignores the effect of Rule 1.10, which imputes the disqualification under Rule 1.7 of any attorney in a firm to other members of the firm.[5] However, while counsel might well be subject to disqualification had they undertaken representation of Mr. Sykes with knowledge of a former client's employment by their adversary, the situation as it has arisen here and the ready solution of utilizing unconflicted counsel for the examination of Mr. Kopra mitigate against the mechanical application of Rule 1.7(b). Accordingly, the drastic remedy of disqualification will not be ordered on the basis of Rule 1.7.[6]

Defendants next cite Rule 1.8 of the Rules of Professional Conduct in support of their disqualification motion. However, that rule is clearly addressed to the prohibition on use of client confidences or other information related to the representation of a client in transactions for the benefit of the lawyer. Accordingly, Rule 1.8 does not provide any basis for disqualification of counsel here.

Finally, defendants cite Rule 1.9 of the Rules of Professional Conduct in support of their disqualification motion. That rule provides, in pertinent part, as follows:

### Rule 1.9. Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation.

\* \* \* \* \* \*

(c) Unless the former client consents after consultation, a lawyer who has formerly represented a client in a matter, or whose present or former firm has

---

**5.** Rule 1.10 provides the general rule of imputed disqualification, as follows:

(a) Except as permitted by paragraph (c), while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), 1.9(b), or 2.2.

**6.** Given the ever increasing size and multiple locations of law firms, the potential for conflict under Rule 1.7 will only increase. The Tennessee Supreme Court has given the bench and bar guidance on how to handle conflicts that arise when attorneys transfer from one law firm to another. *See Clinard v. Blackwood*, 46 S.W.3d 177 (Tenn.2001). It may well be that similar measures should be considered as between lawyers in "megafirms", to ensure compliance with Rule 1.7. The practice of lawyers changing firms and firms merging and increasing in size will undoubtedly continue to lead to problems. Nevertheless, the undersigned believes the solution ordered here is workable and as fair to all sides as possible.

formerly represented a client in a matter, shall not thereafter:

> (1) Use information relating to the representation to the disadvantage of the former client except as these rules otherwise permit or require with respect to a client, or when the information has become generally known; or
>
> (2) Reveal information relating to the representation of the former client except as these rules otherwise permit or require with respect to a client.

Equating plaintiff's trial counsel with the members of Boult Cummings that previously represented LBMC, as must be done under Rule 1.10, it appears that Rule 1.9(a) would pose a problem for counsel's continued representation of Mr. Sykes if that representation is deemed to be "a substantially related matter", and if Mr. Sykes' interests are "materially adverse" to the interests of LBMC. Regarding the relation between the two representations, the third comment to Rule 1.9 states that "[t]he current matter is substantially related to the former matter if the current matter involves the work the lawyer performed for the former client *or there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client,* unless that information has become generally known." In light of this comment, and given counsel's admission that they might even inadvertently use or disclose confidences if required to cross-examine Mr. Kopra, the undersigned finds that the two matters are substantially related.

Regarding material adversity between the interests of Mr. Sykes and LBMC, the undersigned is guided by the rationale of the district court in *Selby v. Revlon Consumer Products Corp.,* 6 F.Supp.2d 577 (N.D.Tex.1997). In *Selby,* the court addressed, under the identically worded Rule

1.9(a) of the ABA Model Rules of Professional Conduct, the question of "whether a lawyer can depose a former client who is a witness in a lawsuit related to the prior representation." *Id.* at 579. Noting that most cases dealing with this issue involve situations where a lawyer sues a former client on behalf of a current client, the court nonetheless concluded that the rule applied even where the former client is to be a third-party witness. *Id.*

The *Selby* court observed that "[t]here is a paucity of authority interpreting the adversity requirement of ABA Rule 1.9." *Id.* at 580. After citing some roughly analogous state and federal court cases, the *Selby* court noted that

> The ABA Committee on Ethics also has adopted a strict definition of adversity where an attorney is confronted with a former client as a witness in a substantially related matter. The Committee noted that:
>
>> [E]xamining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against he duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness ...
>
> This is because a zealous advocate must necessarily challenge the credibility of an adverse witness.

*Id.* at 581 (citations omitted). Relying on the precedents it had cited, and noting that the client-witness was potentially exposed to some limited risk of subsequent litigation and damage to her business reputation, the *Selby* court found that the client-witness would be at "slight risk" if the deposition by former counsel was allowed to go forward, and therefore found that the interests of the current client were materially adverse to the interests of the

former client within the meaning of ABA Rule 1.9. *Id.* The court concluded as follows:

> Selby has a right to depose potential witnesses with knowledge of facts relevant to her case. This may include [the former client]. However, [the former client] has a right to expect that her credibility and integrity will not be impugned by her former attorney in a substantially related matter. For these reasons, neither [the conflicted attorney] nor anyone in his law firm are permitted to conduct this deposition.

*Id.* at 582.

While the *Selby* court was presented with a motion for protective order and to quash deposition, rather than a disqualification motion, it addressed the applicable ethical considerations as though disqualification had been requested. The undersigned finds that the reasoning in *Selby* is sound, and relying on that reasoning, finds that the interests of Mr. Sykes are materially adverse to the interests of LBMC within the meaning of Rule 1.9, but that there is no risk to either client if outside counsel is retained to conduct the deposition of Mr. Kopra and his examination at trial, if necessary.

Finally, it bears noting that subsection (c) of Rule 1.9 is an admonition against the use of confidential information, not a prohibition against representation or a basis for disqualification independent of Rule 1.9(a). *Commonwealth Ins. Co. v. Stone Container Corp.*, 2002 WL 385559, *3–4 (N.D.Ill. March 12, 2002). The obligation embodied by Rule 1.9(c) remains in force regardless of the measures taken to ensure that the representation does not run afoul of subsection (a) of that rule.

In sum, the undersigned finds that the ethical demands of the Tennessee Rules of Professional Conduct, as well as the competing interests of (1) plaintiff in being represented by counsel of his choosing, (2) defendants in going forward with the expert of their choosing, and (3) LBMC/Mr. Kopra in maintaining the confidentiality of information imparted to Boult Cummings during the course of the prior representation, will be adequately complied with and best served by allowing defendants' expert and plaintiff's counsel to remain, but disqualifying Boult Cummings from participating in any manner in the cross-examination of Mr. Kopra at deposition and during the trial of this matter. Plaintiff's counsel is admonished that outside counsel shall have absolutely no exposure to any information of any kind relating to Boult Cummings' prior representation of LBMC and its affiliates, or obtained therefrom.

## III. CONCLUSION

In light of the foregoing, plaintiff's motion to disqualify expert witness is DENIED, and defendants' motion to disqualify plaintiff's counsel is GRANTED in part and DENIED in part.

So **ORDERED.**